In the District Court of the United States
for the District of South Carolina
CHARLESTON DIVISION

RECEIVED
USDC CLERK, CHARLESTON, SC

2006 JUN 12  P 12: 12

| | |
|---|---|
| Amanda Denise Barron, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Charleston County School District, | ) |
| James E. Winbush, Marion Brown, | ) |
| Michael Thomas, Pamela Jubar, | ) |
| Major Bernard, Jocelyn Whaley, and | ) |
| Demetrius Jenkins, | ) |
| | ) |
| Defendants. | ) |
| | ) |

C.A. No. 2:05-2463-PMD-GCK

**REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE**

## I.    INTRODUCTION

The Plaintiff, Amanda Denise Barron ("Plaintiff"), acting *pro se*, has brought a Title

VII action against the above-named defendants, alleging sexual harassment, sex

discrimination, and retaliation in violation of Title VII.[1]  This case is before the undersigned

pursuant to the provisions of Title 28, United States Code § 636(b)(1)(B), and Local Civil

Rules 73.02(B)(2)(e) and 73(B)(2)(g), D.S.C., which authorize Magistrate Judges to review

all pretrial matters in *pro se* cases and in employment discrimination cases, and submit

findings and recommendations to the District Court.

## II.    THE *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus her pleadings are accorded liberal construction.

*Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976);

---

[1]        *See* Complaint at page 15.

*Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978);

*Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970

(1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.

*Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se*

complaint nonetheless may be subject to summary dismissal. The mandated liberal

construction afforded to *pro se* pleadings means that if the court can reasonably read the

pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a

district court may not rewrite a petition to include claims that were never presented. *Barnett*

*v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's

legal arguments for her (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up

questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d

1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

Finally, the requirement of liberal construction does not mean that the court can ignore

a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a

federal district court. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.   BACKGROUND TO THE CASE[2]

Plaintiff is an African-American female who had lived in the Plantersville Community

of Georgetown, South Carolina before moving to Charleston.[3] Plaintiff alleges that a few

years before she moved to Charleston, she met Elder Darryl Joiner at church in Georgetown;

---

[2]     The Background to the Case is drawn from the Complaint and the court will accept these facts as true for the purposes of the Motion to Dismiss filed by the Defendants. *See Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574, 580-81 (D.S.C. 2003).

[3]     *See* Complaint at page 4.

at that time, he "prophesized [sic] to [her] about being his wife."[4]   A few years later, Plaintiff

saw Elder Joiner at another church, and his telephone number was provided to her.  After

Plaintiff moved to Charleston, Elder Joiner, who lives in Charleston, and Plaintiff exchanged

a few telephone calls, and Elder Joiner visited Plaintiff at her home.  Plaintiff joined the New

Life Temple Ministries Church, which Elder Joiner had founded.[5]   Subsequently, Plaintiff had

second thoughts about Elder Joiner, who appears to have had a romantic interest in Plaintiff,

as well as Elder Joiner's church, because Plaintiff contends that several church officials said

negative things about her because she had "never made a public debut as a Prophetess of God

in the Spirit of Moses."[6]   At some point thereafter, Plaintiff left Elder Joiner's church and

severed all ties with him.[7]

Meanwhile, in August 2001, Plaintiff began employment as a keyboarding teacher at

Baptist Hill High School ("Baptist Hill") in Hollywood, South Carolina.[8]  She alleges that

Elder Joiner enlisted the assistance of defendant Marion Brown ("Defendant Brown"), a black

male who is a minister in the African Methodist Episcopal church,[9] to communicate with

Plaintiff.  According to Plaintiff, Elder Joiner used Defendant Brown, who, in turn "us[ed] his

influence as a reverend [and] eventually recruited other teachers to inform me of things



---

[4]       See Complaint at page 4.

[5]       See Complaint at page 4.

[6]       See Complaint at page 6.

[7]       See Complaint at page 7.

[8]       See Complaint, generally.

[9]       See Complaint at page 3.

concerning Elder Darryl Joiner, but they were too personal and rude [sic]."[10]  It appears that Plaintiff also alleges that Elder Joiner was able to influence other employees at Baptist Hill (specifically, the Defendants Winbush, Brown, Thomas, Jubar, Bernard, and Whaley), to carry out a scheme of harassment against Plaintiff which culminated in Plaintiff being removed as Chairperson of Graduation ceremonies at Baptist Hill.[11]

At some time toward the end of the 2003-2004 school year, Plaintiff asked the school administration to set up a meeting with her and the Defendants so she could discuss her belief that Elder Joiner had orchestrated the Defendants' involvement in her personal matters, including the way she should handle her personal calling.[12]  It was during that meeting in May 2004 that Plaintiff learned she was to be removed from the position of Chairperson of Graduation ceremonies.  Plaintiff contends that Elder Joiner's machinations were the cause of this decision.[13]  At the graduation exercise, the other two members of the Graduation committee (Defendant Jubar and Defendant Thomas) were recognized, but Plaintiff did not receive any recognition for her work on the Graduation ceremony.  Defendant Jubar and Defendant Thomas were presented with a blue plaque, and when Plaintiff saw it, she was reminded of the blue interior of Elder Joiner's church.[14]

---

[10]    *See* Complaint at page 7.

[11]    *See* Complaint, generally.

[12]    *See* Complaint at pages 7, 10.

[13]    *See* Complaint at page 8.

[14]    *See* Complaint at pages 8-9.

### IV.    PLAINTIFF'S ALLEGATIONS AGAINST THE DEFENDANTS

Plaintiff's complaint alleging sexual harassment, sex discrimination, and retaliation in violation of Title VII describes the alleged actions taken by each Defendant. At the outset, the court notes that although Plaintiff names the Charleston County School District (the "District") as a Defendant, she does not set forth any allegations whatsoever regarding this defendant. Furthermore, although Plaintiff does not set forth specific dates, it appears to the court that all of these events occurred at some point during the 2003-2004 or 2004-2005 school year at Baptist Hill.[15]

### Defendant James Winbush

Defendant James Winbush ("Defendant Winbush") is an African American male who was, at the time of the offenses alleged, the acting principal of Baptist Hill.[16] Plaintiff sets forth the following allegations against him:

- Defendant Winbush was "unprofessional and biased" towards her.

- After Plaintiff complained about sexual harassment to the District headquarters, Defendant Winbush told others that nothing would happen.

- Plaintiff entered a conference room and Defendant Winbush spread his legs while Plaintiff was in the room.[17]



---

[15]    Counsel for the Charleston County School District (the "District") entered a Notice of Appearance as to the District's employees who have been named as Defendants: James E. Winbush, Marion Brown, Michael Thomas, Pamela Jubar, Major Bernard, and Jocelyn Whaley. [27-1] Although service was accomplished on Demetrius Jenkins, who was a student at the time of the events alleged, no answer was filed on his behalf. On April 14, 2006, the Clerk of Court filed an entry of default as to this defendant. [28-1]

[16]    *See* Complaint at page 2.

[17]    *See* Complaint at page 10.

- At the beginning of the 2004-2005 school year, Defendant Winbush issued keys to the teachers and Defendant Winbush "made a point of brushing [Plaintiff's] keys over to [her]" across a table but he did not do that with other teachers.

- Once, when Plaintiff said "good morning" to Defendant Winbush, "he made a discriminatory groaning sound as if he were a dog."

- Defendant Winbush promised Plaintiff a copy of the cassette tape made during the May 2004 meeting with her co-workers, but she never received the tape.[18]

### Defendant Marion Brown

Defendant Marion Brown ("Defendant Brown") is an African American male who was, at the time of the offenses alleged, a physical education teacher and athletic director and is an affiliate minister of the African Methodist Episcopal Church.[19]  Plaintiff sets forth the following allegations against him:

- Defendant Brown remarked upon Plaintiff's spiritual calling and past experience and mentioned that Plaintiff had prophesied to her first cousin that the latter needed to be delivered because her husband was an adulterer, which cause the pastor to ask Plaintiff to leave the meeting.

- Defendant Brown told Plaintiff that Elder Joiner's secretary "was going to get [Plaintiff]."

---

[18]    See Complaint at page 11.

[19]    See Complaint at page 3.

- Once, a flyer about sexually abused children was left in a drawer of a desk shared by Defendant Brown and Plaintiff.[20]

- Defendant Brown "transferred] messages back and forth to Elder Darryl Joiner about lies concerning [her] job and [her] personal life.[21]

### Defendant Michael Thomas

Defendant Michael Thomas ("Defendant Thomas") is an African American male who was a business education teacher and senior advisor at Baptist Hill at the time of the events alleged.[22]  Plaintiff sets forth the following allegations against him:

- Defendant Thomas instructed Plaintiff to schedule the senior picture day, but was unhappy with the photographer's actions, and said "he was still going to give it to me as if he was talking for Elder Darryl Joiner."

- Once, Defendant Thomas mentioned in Plaintiff's classroom that he and his wife talked in their bedroom.[23]

### Defendant Pamela Jubar



Defendant Pamela Jubar ("Defendant Jubar") is an African American female who was a marketing education teacher, a senior advisor, and Plaintiff's departmental chairperson at Baptist Hill at the time of the events alleged.[24]  Plaintiff sets forth the following allegations against her:

---

[20]     See Complaint at page 11.

[21]     See Complaint at page 12.

[22]     See Complaint at page 3.

[23]     See Complaint at page 12.

[24]     See Complaint at page 3.

- Defendant Jubar used the number 3 repeatedly during conversations with Plaintiff, stating that there were only 33 days of school left, that she needed 3 pencil sharpeners in her class, and the Elder Joiner was going to "go to the third person with his secretary being number one and [Plaintiff] number two, especially after he was informed by [Defendant] Brown that [Plaintiff] took the team to the school administrators."[25]

- Once, Defendant Jubar leaned against a file cabinet and said, "I'm coming, I'm coming, I'm coming."  Plaintiff was offended.

- Defendant Jubar called Plaintiff childish.

### Defendant Major Bernard

Defendant Major Bernard ("Defendant Bernard") is an African American male who was a special education teacher at the time of the events alleged and is a Baptist church pastor.[26]  Plaintiff sets forth the following allegations against him:

- Once, Defendant Bernard said that she looked sad because he had not visited Plaintiff in a while and he was going to buy her flowers.[27]

- Defendant Bernard "knew that this situation started in the churches [and] came to my room.  He said to me that his back was hurting and it started in the churches and it was not going to get better until he lay on his back."[28]

---

[25]    See Complaint at page 12.

[26]    See Complaint at page 3.

[27]    See Complaint at page 20.

[28]    See Complaint at page 14.

Page 8 of  23

**Defendant Jocelyn Whaley**

Defendant Jocelyn Whaley ("Defendant Whaley") is an African American female who was the family and consumer science teacher at Baptist Hill and a member of the same academic department as Plaintiff at the time of the events alleged.[29]  Plaintiff sets forth the following allegations against her:

- Defendant Whaley helped a student, Demetrius Jenkins, print pornography to a computer printer in Plaintiff's classroom.[30]

- Defendant Whaley allowed her students to speak with Plaintiff about what it felt like to be fired and what it is probably like to be a principal.

**Defendant Demetrius Jenkins**

Defendant Demetrius Jenkins ("Defendant Jenkins") is an African American male student at Baptist Hill who learned keyboarding and business applications from Plaintiff at the time of the events alleged.[31]  Plaintiff sets forth the following allegations against him:

- Defendant Jenkins printed pornography to the printer in Plaintiff's classroom, assisted by his teacher, Defendant Whaley.[32]

## V.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), the Defendants' motion to dismiss for failure to state a claim should not be granted unless it appears certain that the Plaintiff can prove no set of facts which would support her claim and would entitle her to relief.  In



---

[29]    *See* Complaint at page 3.

[30]    *See* Complaint at page 14.

[31]    *See* Complaint at page 3.

[32]    *See* Complaint at page 14.

considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993) (citations omitted). As the Plaintiff in this case is *pro se*, and her pleadings are entitled to liberal construction, the complaint will survive a Rule 12(b)(6) motion unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle [her] to relief." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*) (internal quotation omitted); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (holding that a Rule 12(b)(6) motion should be denied unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").

## VI.    ADMINISTRATIVE HISTORY

To assert a Title VII claim in the United States District Court, a plaintiff first must exhaust his or her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or the South Carolina Human Affairs Commission ("SHAC"). *See Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005), and *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). "The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles*, 429 F.3d at 491, *citing EEOC v. American Nat'l Bank*, 652 F.2d 1176, 1186 (4th Cir. 1981); *see also Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999) ("It is axiomatic that a claimant must exhaust his administrative remedies by raising his claim before the EEOC"). "This requirement is variously referred to as a jurisdictional prerequisite to adjudication in the



federal courts, a procedural prerequisite to bring suit, and a requirement that a claimant must exhaust administrative remedies." *Sloop*, 198 F.3d at 148; *see also Johnson v. Quin Rivers Agency For Community Action, Inc.*, 140 F. Supp. 2d 657 (E.D. Va. 2001) (finding no jurisdiction to hear claims of discrimination that were never mentioned in the narrative portion of the charge).

On or about September 4, 2004, Plaintiff timely filed a complaint of employment discrimination with SHAC, pursuant to 42 U.S.C. § 2000e-5 and the regulations promulgated thereunder. SHAC issued a "no cause" letter on April 18, 2005 with respect to Plaintiff's claims.[33] This finding was adopted by the EEOC, which issued a Dismissal and Notice of Rights letter to Plaintiff dated June 16, 2005.[34]

The court does not have before it a copy of Plaintiff's SHAC complaint or EEOC charge. "A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit." *Mayers v. Washington Adventist Hosp.*, 131 F. Supp. 2d 743, 747 (D. Md. 2001), *citing Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)); *see also Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint"). Indeed, the District Court of South Carolina has specifically held that "a civil suit under Title VII is limited to discrimination charged in the report to the EEOC or to discrimination actually found by the EEOC upon investigation of the original charge." *Stehle v. General Mills Restaurant, Inc.*, 875 F. Supp.

---

[33]    *See* Complaint [1-1] at page 23.

[34]    *See* Complaint [1-1] at page 22.

Page 11 of 23

320, 323 (D.S.C. 1994) (emphasis added). "Where . . . claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995), *citing EEOC v. General Electric Co.*, 532 F.2d 359, 366 (4th Cir. 1976)).

Not having the charge before it, the court is unable to determine whether Plaintiff's claims of sexual harassment, sex discrimination, and retaliation were mentioned in the administrative proceedings. However, giving the *pro se* Plaintiff every benefit of the doubt, and noting that the Defendants have not raised the issue of failure to exhaust administrative remedies in their Motion, the court will presume that the claims presently before it were raised in the administrative proceedings prior to filing suit.

## VII.    FEDERAL COURT PROCEEDINGS

On August 24, 2005, Plaintiff filed this action against the District, Defendant Winbush, Defendant Brown, Defendant Thomas, Defendant Jubar, Defendant Bernard, and Defendant Whaley, all of whom are faculty members of Baptist Hill, and Defendant Jenkins, a student at Baptist Hill High School, seeking recovery for sexual harassment, sex discrimination, and retaliation in violation of Title VII.[35]

With respect to Plaintiff's alleged damages, Plaintiff claims that as a result of the Defendants' actions, Plaintiff was required to take two bottles of Aleve and Motrin as well as prescription Skelaxin. She has also needed to use a traction kit, heating pad, and extra strength rubbing cream to ease her pain. At one point, she went to a doctor, but "he ended up

---

[35]    *See* Complaint at page 15.

calling mental health to evaluate [her.]"[36]  Plaintiff seeks $700.00 for medical costs and

$10,000,000 for compensatory damages for pain and suffering.[37]

On December 21, 2005, the District filed a motion to dismiss.[38]  [8-1]  On December

28, 2005, the undersigned issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th

Cir. 1975), notifying Plaintiff of the summary dismissal procedure and the possible

consequences if she failed to adequately respond to the Motion to Dismiss within thirty-four

(34) days.  [10-1]  Thereafter, on January 3, 2006, Plaintiff returned executed summonses as

to the Defendants Whaley, Jenkins, Jubar, and Thomas.[39]  [11-1]  On January 23, 2006,

Plaintiff filed a Motion to Amend her complaint; she attached affidavits from the individual

Defendants from 2004 which had been produced during the SHAC investigation and set forth

in that motion additional arguments against the allegations contained in the various affidavits.

[14-1]  The Plaintiff's Motion to Amend was summarily denied by the undersigned.  [15-1]

The Plaintiff failed to respond to the court's *Roseboro* order; accordingly, the

undersigned issued an Order allowing the Plaintiff an additional twenty days in which to

respond to the Motion to Dismiss.  [16-1]  On February 7, 2006 the Plaintiff filed a pleading

which explained that her motion to amend the complaint "was [her] opposition to dismiss the

case[.]"  [17-1][40]  In response, the Defendants filed a Reply, noting that Plaintiff's Motion to

---

[36]       *See* Complaint at page 15.

[37]       *See* Complaint at pages 15-16.

[38]       As of that date, there was no record that any of the other Defendants had been served.

[39]       Plaintiff also returned as executed the summons for the District.  [11-1]

[40]       Plaintiff argues in a subsequent pleading [25-1] that her Motion to Amend was a response to the Motion to Dismiss.  Although the court construed Plaintiff's Motion to Amend liberally, the court could not discern that Plaintiff's Motion to Amend the complaint was meant as a Response to the Motion to Dismiss.

Amend did not seek to add new allegations but attempted to introduce (1) a collection of affidavits that had been executed in 2004 which related to the SHAC investigation; and (2) Plaintiff's denials of the allegations contained in those affidavits. [18-1] Significantly to the court, and as the Defendants noted, Plaintiff did not argue against the Defendants' contention that her complaint failed to state a claim upon which relief could be granted. [18-1]

On February 17, 2006, the court issued an Order directing the Marshal to serve copies of the summons and complaint upon the unserved defendants (Winbush, Brown, and Bernard). [24-1] On February 22, 2006, Plaintiff filed a response to the motion to dismiss. This response can best be characterized as additional responses to the statements made by the various individual Defendants in their 2004 affidavits. [25-1] Thereafter, counsel for the District filed a Notice of Appearance as to the employees of the District, *to wit* Defendants Winbush, Brown, Thomas, Jubar, Bernard, and Whaley. [27-1]

On April 14, 2006, the Clerk of Court entered an Entry of Default as to Defendant Jenkins. [28-1]

### VIII.    ANALYSIS

#### A.  Sexual Harassment



Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). The Fourth Circuit requires proof of the following elements to establish a claim of sexual harassment under Title VII:  (1) the conduct in question was unwelcome; (2) the harassment was based on sex; (3) the harassment was sufficiently pervasive or severe to create an abusive

Page 14 of  23

working environment; and (4) some basis exists for imputing liability to the "employer." *Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir. 1989), *aff'd in pertinent part*, 900 F.2d 27 (4th Cir. 1990) (en banc).

Taking those factors in order, the court will view the facts in the light most favorable to the Plaintiff and assume that the conduct was unwelcome, and that the harassment was based on Plaintiff's sex. However, the record does not support, or even suggest that the harassment was sufficiently pervasive or severe to create an abusive working environment. To meet the third prong of the *Paroline* test, the conduct in question must (1) be "severe or pervasive enough to create an objectively hostile or abusive work environment" and (2) be subjectively perceived by the victim to be abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). "[S]exual harassment is actionable . . . only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working condition." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). Courts should examine "all the circumstances," including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or merely offensive; and (4) whether it unreasonably interfered with the plaintiff's work performance. *Id.* at 23; *see also E.E.O.C. v. R&R Ventures*, 244 F.3d 334, 339 (4th Cir. 2001).



Whether or not Plaintiff herself might have felt that her workplace was hostile, she must actually allege facts which would satisfy a reasonable third-party observer that the conduct was hostile. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied*, 475 U.S. 1082 (1986) (citation omitted).

Taking a very liberal view as to the allegations, and viewing the facts in the light most favorable to Plaintiff, the sum total of instances of sexual harassment were:

- Defendant Winbush, a male, once spread his legs while Plaintiff was in the room;

- When Plaintiff greeted Defendant Winbush, he responded with a groaning sound like a dog;

- Defendant Bernard, a male, once said that he thought Plaintiff looked sad and wanted to buy her flowers.8

- A flyer about sexually abused children was once left in a drawer of a desk used by both Defendant Brown, a male, and by Plaintiff.

- Defendant Jubar, a female, leaned against a file cabinet one time and said, "I'm coming, I'm coming, I'm coming."

- Defendant Whaley, a female, helped a student print pornography to a computer printer in Plaintiff's classroom.

The Fourth Circuit has observed that "Title VII is not a federal guarantee of



refinement and sophistication in the workplace." *Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997). With that admonition in mind, the court does not believe that these events amount to such severe conduct that might in a subjective sense have altered the terms and conditions of Plaintiff's employment, even when considered as a whole. For example, Defendant Winbush's conduct does not rise to the level of sexual harassment; even full body hugs or exposing one's thighs to a plaintiff does not constitute sexual harassment. *See, e.g.,* *Atkins v. Computer Servs. Corp.*, 264 F. Supp. 2d 404 (E.D. Va. 2003). In addition, even if

the comment about buying flowers for Plaintiff could be viewed in a romantic light, it would not constitute sexual harassment since it was apparently a one-time statement. Thus, assuming that every incident occurred as alleged, and assuming that there was no other explanation for the behaviors other than as alleged, the sum total of the conduct is not so pervasive and severe as to constitute sexual harassment. The court has thoroughly reviewed the record, and recommends that the Plaintiff's claim against the Defendants for sexual harassment should be dismissed, because Plaintiff has failed to allege the type of pervasive and unwelcome conduct which could possibly, as a matter of law, constitute sexual harassment.

### B. Sex Discrimination

The court interprets Plaintiff's action as one alleging sex discrimination. To prove discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her position and her job performance was satisfactory; (3) she was discharged in spite of her qualifications and performance; and (4) following her discharge, the position remained open to similarly qualified applicants. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989). For the purposes of the final element, the plaintiff may show that she was replaced by someone not in her protected class. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186-87 (1989).



Defendants have conceded in their Motion that Plaintiff is a member of a protected class as a black female. Plaintiff has pled that she was competent for her position, and Plaintiff's Complaint alludes to "a recent employment setback."[41] Even if the court

---

[41]    *See* Complaint at page 15.

understands this statement to suggest that Plaintiff alleges that she was constructively

discharged, her case still must fail because there is a complete absence of any allegation that

any member of an unprotected class received any better treatment than she. There is

absolutely no allegation that either a white person or a male received her position after she

left. In fact, there is absolutely no allegation that anyone at all has been hired to replace her.

Given that Plaintiff has failed to make any allegation at all as to one of the necessary elements

of a traditional discrimination claim, it may be that Plaintiff's Complaint did not intend to set

forth such a cause of action. However, reading Plaintiff's Complaint liberally, and assuming

that she set forth a cause of action for discrimination based on sex, the court nevertheless

must recommend that her claim be dismissed for failing to state a cause of action.

### C. Retaliation

Section 704(a) of Title VII provides that:

> [I]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter. 42 U.S.C. § 2000e-3(a).

Adverse employment actions include any retaliatory act or harassment if that act or

harassment results in an adverse effect on the terms, conditions, or benefits of employment.

*Von Gunten v. Maryland*, 243 F.3d 858, 865-68 (4th Cir.2001) (citation omitted). Plaintiff's



retaliation claim is evaluated under the standard articulated in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 807 (1973). *Thompson v. Potomac Electric Power Co.*, 312 F.3d 645,

650 (4th Cir. 2002), *citing Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir.

1998). To establish a *prima facie* retaliation claim, Plaintiff must produce evidence from

which a reasonable jury could find that (1) she engaged in a protected activity; (2) her

employer took an adverse employment action against her; and (3) a causal connection existed

between the protected activity and the asserted adverse action. *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir.2004); *see also King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003).

Taking these factors in order, Plaintiff cannot prove she engaged in a protected activity. "Protected activity includes opposition to any practice made an unlawful employment practice under Title VII." *Kun v. Berkeley County Government*, 214 F.Supp. 2d 559, 564 (D.S.C. 2001). Despite the fact that this court must take as true the Plaintiff's descriptions of events that occurred before she met with Baptist Hill administrators and some of the Defendants in May 2004, none of those events–taken alone or together–constituted sexual harassment. For the reasons already discussed above, Plaintiff has simply not been subjected to sexual harassment at all. It follows, then, that regardless of whether any of the events mentioned in the Complaint were discussed during the May 2004 meeting, none of them would qualify as sexual harassment. The complaint about such matters, therefore, would not qualify as a protected activity that would support a suit for retaliation.

Furthermore, even if Plaintiff were to have engaged in protected activity, she cannot show that she suffered an adverse employment action. An adverse employment action must amount to more than an insignificant alteration of job responsibilities. *See Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th Cir. 2001) ("Adverse employment action includes any retaliatory act or harassment if, but only if, that act or harassment results in an adverse effect on the 'terms, conditions, or benefits' of employment." *Von Gunten, quoting* 42 U.S.C. § 2000e-3). It is well established that not every action taken by an employer adverse to the aggrieved party amounts to an adverse employment action within the scope of Title VII. *See Von Gunten*, 243 F.3d at 866-67; *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981) (en banc).



The Fourth Circuit has observed that it was certain "that Congress did not intend Title VII to provide redress for trivial discomforts endemic to employment[.]" *See Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999).

Plaintiff's Complaint indicates that the only adverse employment action which Plaintiff alleges she suffered was her removal as Chairperson of Graduation, which she claims was a result of her voicing opposition to the actions (as listed above) of the Defendants. Plaintiff does not allege that any aspect of her teaching position altered in any way because of her complaints about her co-workers. Plaintiff's allegation that she was removed from an honorary position as Chairperson of Graduation does not amount to a change in the conditions of her regular employment. The loss of discretionary awards and bonuses from an employer is not actionable. "As a matter of law . . .the non-receipt of a discretionary bonus does not constitute an adverse employment action. *See Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996) (lowered performance evaluation of "fully successful" which prevented plaintiff from obtaining discretionary bonus did not constitute adverse employment action under Title VII); *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997) (employer's failure to award discretionary merit pay increases did not constitute adverse employment action).



Therefore, assuming everything Plaintiff has alleged is true, and she suffered sexual harassment and sex discrimination, Plaintiff's loss of the honorary position of Chairperson of Graduation does constitute a change in her employment. Accordingly, the court recommends that Plaintiff's claim for retaliation be dismissed.

Given this court's conclusion that Plaintiff has failed to state any cause of action, it is recommended that Defendants' Motion to Dismiss should be granted. In addition, as it is the

court's conclusion that Plaintiff has failed to state any cause of action, it recommends that

Defendant Jenkins be relieved from the Clerk's entry of default and that the Entry of Default

[28-1] be deemed moot.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Defendants' Motion to Dismiss

**[8-1] should be granted** and that the **Entry of Default [28-1] should be deemed moot.**.

George C. Kosko
United States Magistrate Judge

June **12** , 2006
Charleston, South Carolina

**<u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"</u>**
**<u>& The Serious Consequences of a Failure to Do So</u>**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the period for filing objections, **but not thereafter**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509 (6th Cir. 1991); *see also* <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* <u>Branch v. Martin</u>, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* <u>Wright v. Collins</u>, <u>supra</u>; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**

**United States District Court**

**Post Office Box 835**

**Charleston, South Carolina 29402**
